■ EDWARD P. KALLEN et al., Appellants, v MARTIN FELDI et al., Defendants, and RICHARD J. PARIS et al., Constituting the Planning Board of the Town of Clarkstown, et al., Respondents. [596 NYS2d 918] —Levine, J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Zeck, J.H.O.), entered November 8, 1991 in Rockland County, upon a decision of the court in favor of defendants.

In this RPAPL article 15 action, plaintiffs seek a determination of defendant Martin Feldi's claims to a 16.5-foot right-of-way (hereinafter ROW) created in 1896 over their properties located in a subdivision known as Skye Estates in the Town of Clarkstown, Rockland County. Plaintiffs also seek to annul the approval of the Planning Board of the Town of Clarkstown of an adjacent subdivision, Brittany Homes, which approval relied on use of the ROW to access a public road.

In 1896, an agreement was made among adjacent real property owners creating the subject ROW which provided access to a public highway later named Laurel Road. The duly recorded agreement was between Henry Schriever, Catherine Schriever, Henry Bardon, Louisa Bardon, Gottfried Jackel and Anna Jackel (as parties of the first part) and Carl Miller (as party of the second part), and described the 16.5-foot wide ROW extending from the south side of the public highway through property belonging to the Schrievers, Bardons and Jackels to the north side of Miller's property, and expressly bound the parties' heirs, assigns and successors. Feldi now owns property consisting, *inter alia,* of a portion of the property formerly owned by the Schrievers, Bardons and Miller to the south of Laurel Road, which does not have frontage on any public roadway, but would have access to York Drive (built in the 1960s) to the south through the ROW. York Drive partly abuts what was formerly Miller's property and is now in part plaintiffs' property.

Plaintiffs own residential property in Skye Estates to the south of and adjacent to Feldi's property, and the ROW is located in part on their property. Plaintiff Ana Kessler's property is west of and adjacent to the property of plaintiffs Edward P. Kallen and Elizabeth Kallen. The Skye Estates subdivision was approved in 1971 by the Planning Board and a subdivision map was filed which did not depict the ROW. In 1987, Feldi applied and received approval for a three-lot subdivision known as Brittany Homes based on access to York Drive through the ROW. The Town Board of the Town of

Clarkstown passed a resolution declaring the ROW sufficient for access to the Brittany Homes subdivision *(see,* Town Law § 280-a [4]).

Plaintiffs commenced this RPAPL article 15 action against defendants seeking, *inter alia,* a declaration that Feldi could not use the ROW to access York Drive and annulment of the Planning Board's determination approving the Brittany Homes subdivision with ROW access over plaintiffs' land to York Drive. Plaintiffs maintain that the purpose of the ROW was for access by property owners from their property north to Laurel Road and not to access York Drive to the south.

Following a trial, Supreme Court determined that the ROW created in 1896 is valid, permits ingress and egress northerly to Laurel Road and southerly to York Drive, and is conceptually broad enough to permit access by motor vehicle. The court found that the ROW had neither been abandoned nor terminated and that it had not been extinguished by merger, and declined to annul the Planning Board's approval of the Brittany Homes subdivision which permitted use of the ROW to access York Drive. Plaintiffs now appeal.

Plaintiffs argue that the purpose and intent underlying the ROW was to permit access north to Laurel Road from property to the south of Laurel Road, and not to permit landowners to travel south on the ROW beyond their property to access what later became York Drive. Plaintiffs also argue that in view of the original purpose of the ROW, it was terminated when York Drive—on which plaintiffs' property fronts—was built because there was no longer any need to gain access to Laurel Road. Defendants argue that the 1896 agreement created an unrestricted ROW in all parties to travel between Miller's property and Laurel Road, contained no limitation on the direction of travel over the ROW and, therefore, provides access to York Drive.

The 1896 agreement indicates that Miller's property was to the rear (south) of the properties owned by the Schrievers, Bardons and Jackels and had no outlet to the public road (later named Laurel Road). It provided that "[the Schrievers, Bardons and Jackels] over which the said [ROW] is located according to [an attached map] gives unto [Miller] the right and privileges by himself and his heirs * * * at all times freely to pass and repass on foot or with horse, oxen, cattle, beasts of burden, wagon carts, sleigh or other vehicles or carriages, whatever from [Laurel Road] to the lands of [Miller] and from the lands of [Miller] to [Laurel Road]". The agree-

ment described the ROW as a "strip of land being the width of one rod * * * running [from] the north bounds of [Miller's land] to the south bounds of [Laurel Road]". The agreement further provided that the Schrievers, Bardons and Jackels, in consideration of one dollar paid by each to the others, acquired "the same privileges over said [ROW] that [Miller] has over or in said premises for themselves and their heirs * * * and assigns forever" and that "[e]ach of the parties to this agreement is to have all the rights and privileges that any of the other parties has in the use of the [ROW] forever".

Whether the language of the agreement is ambiguous is a question for the court to decide as a matter of law *(Hurd v Lis,* 92 AD2d 653, 654). We read the agreement as unambiguously establishing an unrestricted right for all parties and their heirs and assigns to use the ROW. Although the agreement indicates that Miller had no access to Laurel Road, it does not expressly limit the use of the ROW to provide Miller and other parties such access. Rather, Miller and the other property owners granted each other the same reciprocal right to use the ROW. The portion of the ROW which actually abutted and provided access to Laurel Road was located on the Schrievers' property; therefore, if the agreement is interpreted to limit the purpose of the ROW to solely provide access to Laurel Road, the right granted to the Schrievers to use the ROW would have been utterly meaningless. Such a construction would violate the principle that "all of the provisions of an agreement creating an easement must be taken into consideration in determining the nature and extent of the creation" (2 Warren's Weed, New York Real Property, Easements, § 3.02 [4th ed]; *see, Irving Trust Co. v Anahma Realty Corp.,* 285 NY 416).

Limiting the Schrievers', Bardons' and Jackels' (and their successors in interest) right to freely pass on the ROW in both directions contradicts the clear intent of the agreement to create reciprocal rights in all parties to use the ROW for ingress and egress along the ROW in either direction. "The intent of the parties in creating an easement by express grant should be given effect, and here that intent can be readily ascertained by an examination of the unambiguous language in [the agreement] which established the easement" *(Van Laak v Malone,* 92 AD2d 964, 965 [citation omitted]; *see,* 49 NY Jur 2d, Easements, § 35). Neither the documentary evidence nor the trial testimony supports plaintiffs' claims that the ROW was extinguished by merger based on common ownership of the dominant and servient parcels *(see, Riccio v*

*De Marco,* 188 AD2d 847; 2 Warren's Weed, New York Real Property, Easements, § 13.01 [4th ed]), or that this ROW—created by express grant—was ever intentionally terminated or abandoned by nonuse or otherwise *(see, Consolidated Rail Corp. v MASP Equip. Corp.,* 67 NY2d 35, 39-40; 2 Warren's Weed, New York Real Property, Easements, §§ 10.02, 12.03 [4th ed]). Furthermore, the language in Feldi's deed conveying the ROW which makes reference to northerly access to Laurel Road did not modify or limit the scope of the ROW, but instead constituted words of description and not words of limitation, which is demonstrated by the express reference to and incorporation of the recorded 1896 agreement.

Finally, plaintiffs' challenge to the Planning Board's determination approving the Brittany Homes subdivision properly lies in a CPLR article 78 proceeding. We conclude that the Planning Board did not act in excess of its jurisdiction or amend the Skye Estates subdivision map, which had omitted the ROW, by approving the Brittany Homes subdivision depicting the ROW. The evidence does not demonstrate that the ROW was ever extinguished or terminated by merger, abandonment or otherwise, and, therefore, the ROW remains in existence regardless of the Planning Board's prior approval of a subdivision map that did not depict the ROW. In light of the foregoing, the Planning Board did not exceed its jurisdiction under Town Law § 276 (1) in approving the Brittany Homes subdivision and establishing the open development area pursuant to Town Law § 280-a.

Mikoll, J. P., Crew III, Casey and Harvey, JJ., concur. Ordered that the judgment is modified, on the law, with costs to respondents, by converting so much of the action as challenged the determination of the Planning Board of the Town of Clarkstown approving the Brittany Homes subdivision to a CPLR article 78 proceeding; said determination confirmed; and, as so modified, affirmed.